**296 F.3d 43 (1st Cir. 2002); 02-1145, Tower Ventures, Inc. v. City of Westfield ;**

296 F.3d 43
Tower Ventures, Inc. v. City of Westfield

July 23, 2002
02-1145

Page 43

296 F.3d 43 (1st Cir. 2002)

TOWER VENTURES, INC., Plaintiff, Appellant,

v.

CITY OF WESTFIELD, et al., Defendants, Appellees.

No. 02-1145.

United States Court of Appeals, First Circuit

July 23, 2002

Submitted June 19, 2002.

Page 44

Kenneth Ira Spigle on brief for appellant.

Peter H. Martin, Assistant City Solicitor, on brief for appellees.

Before SELYA, Circuit Judge, COFFIN and CYR, Senior Circuit Judges.

SELYA, Circuit Judge.

On July 18, 2000, plaintiff-appellant Tower Ventures, Inc. (Ventures) applied to the Westfield, Massachusetts, planning board for permission to build a wireless communication tower at a specified site. After the planning board voted to deny the permit, Ventures brought suit in the federal district court against the city and various municipal officials. Ventures alleged that the planning board's decision was arbitrary and effectively prevented it from providing cellular coverage in a significant area, thus violating both the Massachusetts Zoning Act, Mass. Gen. Laws ch. 40A, § 17, and the Telecommunications Act of 1996, 47 U.S.C. § 332(c). The defendants denied these allegations.

On May 30, 2001, the district court entered a scheduling order that, inter alia.

Page 45

required Ventures, on or before July 16, 2001, to effectuate certain basic discovery, designate its expert witnesses, and disclose specified information about those witnesses and their findings. See Fed. R. Civ. P 16(b), 26(a)(2). The deadline came and went without any discernible effort by Ventures to produce the materials required by the scheduling order.

On August 14, 2001, the parties jointly moved to revise the scheduling order. In that motion, Ventures represented that it had been unable to comply with the order because of its counsel's engagements elsewhere and the "summer vacations of certain individuals needed to provide information to assist in providing discovery responses." The motion asked the court to extend the date for furnishing discovery materials to August 17, 2001, and to set a deadline of October 19, 2001 for the filing of Ventures's anticipated summary judgment motion. The court acquiesced and immediately entered an order memorializing the proposed time line. Despite the court's order, nothing happened.

On November 6 - eighty-one days after the revised deadline for Ventures to serve its expert witness disclosure and responses to discovery, and eighteen days after Ventures's summary judgment motion was due - the district court, citing Ventures's serial violations of the court's scheduling order, directed Ventures to show cause why the action should not be dismissed with prejudice. On the same date, Ventures moved for a further extension of the lapsed due dates because of "unexpected delays in assembling the information" necessary to comply with its discovery obligations.[1]

Ventures filed a timely response to the show-cause order, asserting that it had furnished some draft discovery; that the defendants had not objected to the requested extension of the scheduling order; [2] and that, in all events, the defendants would not be prejudiced by a further delay. Pertinently, however, Ventures gave no reason for its noncompliance beyond a general statement that its counsel had been preoccupied with the handling of other matters.

On November 21, 2001, the district court dismissed the case for failure to comply with court orders and want of prosecution. Tower Ventures, Inc. v. City of Westfield, No. 00-30196, slip op. at 4 (D.Mass. Nov. 21, 2001) (unpublished). The court's rescript emphasized that Ventures had failed to provide an adequate explanation for its noncompliance: "all the court has been told is that [Ventures] has, on two occasions now, simply ignored court-ordered deadlines because of difficulties in providing basic discovery." Id. at 3.

Ventures moved for reconsideration, arguing, inter alia, that it had belatedly furnished the overdue discovery materials. The district court summarily denied the motion. This appeal followed.

In an era of burgeoning case loads and thronged dockets, effective case management has become an essential tool for handling civil litigation. The Civil Rules recognize this reality; they afford district courts substantial authority to enforce case-management orders. See Fed. R.Civ.P. 16(f); see also Jones v. Winnepesaukee Realty, 990 F.2d 1, 5 (1st Cir. 1993).

We have made it plain that "a litigant who ignores case-management deadlines

Page 46

does so at his peril." Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998). Consequently, when noncompliance occurs, the court may choose from a broad universe of possible sanctions. This flexibility is necessary because the circumstances attendant to noncompliance are apt to differ

widely. In the last analysis, then, the choice of an appropriate sanction must be handled on a case-by-case basis. See Robson v. Hallenbeck, 81 F.3d 1, 2 (1st Cir. 1996) (explaining that this exercise "def [ies] mechanical rules").

From a plaintiffs standpoint, the most dreaded sanction is dismissal with prejudice. Although this is strong medicine, not casually to be dispensed, a court may, in appropriate circumstances, dismiss a case with prejudice for violation of a judicial order without consideration of lesser sanctions. See, e.g., Top Entertainment Inc. v. Ortega, 285 F.3d 115, 119 (1st Cir. 2002); Figueroa Ruiz v. Alegria, 896 F.2d 645, 649 (1st Cir. 1990); see also Link v. Wabash R.R. Co., 370 U.S. 626, 630-51, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Although dismissal ordinarily should be employed only when a plaintiffs misconduct is extreme, see Enlace Mercantil International, Inc. v. Senior Indus., Inc., 848 F.2d 315, 317 (1st Cir. 1988), disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal), see Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987).

This principle applies with undiminished force to scheduling orders. To manage a crowded calendar efficiently and effectively, a trial court must take an active role in case management. Scheduling orders are essential tools in that process - and a party's disregard of such orders robs them of their utility. For that reason, litigants have an "unflagging duty to comply with clearly communicated case-management orders." Rosario-Diaz, 140 F.3d at 315.

This does not mean either that every breach of a scheduling order warrants dismissal or that appellate courts will rubber-stamp the use of dismissal as a sanction, no matter how arbitrary. We review a trial court's choice of sanction, dismissal included, for abuse of discretion. Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); Jones, 990 F.2d at 5. We caution, however, that this standard of review is not appellant-friendly - and a disgruntled litigant bears a heavy burden in attempting to show that an abuse occurred. United States v. One 1987 BMW 325, 985 F.2d 655, 657 (1st Cir. 1993); Spiller v. U.S.V. Labs., Inc., 842 F.2d 535, 537 (1st Cir. 1988).

Against this backdrop, we turn to the facts at hand. Ventures maintains that dismissal is too harsh a sanction because its infractions were neither willful nor egregious. It views this as a case in which counsel on both sides tacitly agreed to conduct discovery at their own pace, and emphasizes that the resultant delay did not prejudice the defendants.

The difficulty with this argument is that it ignores the court's independent interest in administering its docket. That interest is strong, and the court's efforts at stewardship are undermined where, as here, a party cavalierly flouts the court's scheduling orders. Unexcused misconduct of that stripe places the choice of sanction (up to, and including, dismissal) within the sound discretion of the district court. See Top Entertainment, 285 F.3d at 118; **Barreto v. Citibank**, NA., 907 F.2d 15, 16 (1st Cir. 1990).

To be sure, violation of a scheduling order may be excused if good cause exists for the offender's failure to comply.

Page 47

See Robson,81 F.3d at 3. Here, however, the district court's show-cause order gave Ventures an opportunity to explain its serial failures to honor the discovery schedule. Ventures responded in empty generalities, stating only that its counsel had encountered "unexpected delays" in assembling

discovery. This conclusory reply was wholly uninformative. As the lower court aptly observed, the "[p]laintiff's explanation explained] nothing." Tower Ventures, slip op. at 3. If there was a legitimate reason for Ventures's failure to comply with the scheduling order, it was not communicated to the district court.[3]

When, as in this case, a non-complying party has been afforded an opportunity to explain its failure to abide by a court order, we give a wide berth to the presider's judgment that, under all the circumstances, the proffered justification is insufficient. See Robson 81 F.3d at 5. So it is here: the absence of a legitimate reason, coupled with the fact that the court previously had granted Ventures an extension, made dismissal an appropriate sanction.

If more were needed - and we doubt that it is - the circumstances surrounding the second extension request are damning. The initial motion to extend the timetable set by the scheduling order was filed on August 14, 2001. In it, the parties requested that the time for Ventures's responses to discovery and designation of experts be extended to August 17 - a mere three days later. The court had every right to expect, when it granted the requested extension, that Ventures would comply immediately. But Ventures then proceeded to ignore the August 17 deadline that it had suggested. That is unacceptable. When a litigant seeks an extension of time and proposes a compliance date, the court is entitled to expect that the litigant will meet its self-imposed deadline. Mendez v. Banco Popular de P.R., 900 F.2d 4, 6 (1st Cir. 1990). In the absence of excusatory circumstances - and none have been identified here - the litigant's failure to do so warrants an inference of deliberate manipulation.

In an effort to blunt the force of this reasoning, Ventures argues that the defendants were not prejudiced by its procrastination, and, therefore, that dismissal is inapropos. That assessment is far too glib. Although prejudice to the defendants can be a factor in determining whether dismissal is a condign sanction, see, e.g., Robson, 81 F.3d at 3, the analysis is multifaceted, and the presence or absence of prejudice is not determinative. To hold otherwise would devalue the judiciary's strong institutional interest in ensuring that litigants honor court orders. See Legault v. Zambarano, 105 F.3d 24, 28 (1st Cir. 1997); see also Damiani v. R.I. Hosp., 704 F.2d 12, 16 (1st Cir. 1983).

We need go no further.[4] In National Hockey League, the Supreme Court explained that sanctions for discovery violations have a dual purpose: they serve not only to punish the offender but also to deter others from similar misconduct. 427 U.S. at 642-43, 96 S.Ct. 2778. The sanction imposed here achieves both ends. It is reasonably commensurate to the infraction, and its imposition sends a clear signal to others that court orders must be

Page 48

obeyed. See id. at 643, 96 S.Ct. 2778 (suggesting that dismissal as a sanction may prevent other litigants from "feel[ing] freer than we think . . . they should feel to flout other discovery orders of other district courts"). Viewed in this light, the dismissal of this case for noncompliance with the scheduling order was well within the ambit of the trial court's discretion.

Affirmed.

Notes:

[1] The court's show-cause order and Ventures's motion for a further extension of time apparently crossed in the mail.

[2] This is not to say that there was an agreement among counsel. The defendants simply elected to leave the matter to the district court's discretion.

[3] Certainly, the fact that Ventures's counsel was busy with other cases is no excuse. See, e.g., Mendez, v. Banco Popular de P.R., 900 F.2d 4, 8 (1st Cir. 1990); Pinero Schroeder v. FNMA, 574 F.2d 1117, 1118 (1st Cir. 1978) (per curiam).

[4] Inasmuch as the district court did not abuse its discretion in dismissing this action on the basis of Ventures's failure to comply with the scheduling order, we do not consider whether it would have been an abuse of discretion to dismiss for want of prosecution.

---------

Lawriter Corporation. All rights reserved.

The Casemaker Online database is a compilation exclusively owned by Lawriter Corporation. The database is provided for use under the terms, notices and conditions as expressly stated under the online end user license agreement to which all users assent in order to access the database.