# 330 F.3d 76 (1st Cir. 2003); 02-1958, Young v. Gordon;

330 F.3d 76
Young v. Gordon

June 3, 2003
02-1958

Page 76

330 F.3d 76 (1st Cir. 2003)

DAVID A. YOUNG, Plaintiff, Appellant,

v.

KENNETH GORDON et al., Defendants, Appellees.

No. 02-1958

United States Court of Appeals, First Circuit

June 3, 2003

Submitted April 18, 2003

Page 77

[Copyrighted Material Omitted]

Page 78

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS, [Hon. Edward F. Harrington, Senior U.S. District Judge.

COUNSEL

William E. Conner on brief for appellant.

Kenneth I. Gordon, pro se ipso, on brief for appellee Gordon.

James Romeyn Davis, pro se ipso, and Sheldon, Davis & Wells, PC on brief for appellee Davis.

Before Selya, Circuit Judge, Coffin, and Porfilio,[*]Senior Circuit Judges.

SELYA, Circuit Judge.

On January 29, 2001, plaintiff-appellant David A. Young brought suit against two fellow attorneys, Kenneth Gordon and J.R. Davis, for breach of contract and tortious interference with business relationships. After nearly sixteen months of acrimonious pretrial skirmishing, the district court dismissed the action, citing Young's repeated failures to comply with court orders. The court subsequently denied his motion for reconsideration. Young appeals. We affirm.

The relevant background facts largely relate to matters of procedure and timing. On May 22, 2001 (about eleven weeks after
Page 79

Young filed suit), the district court convened a scheduling conference. See Fed.R.Civ.P. 16. The court ordered the parties to submit a joint statement within thirty days. See D. Mass. R. 16.1(d) (requiring "a joint statement containing a proposed pretrial schedule," including, inter alia, a discovery plan and a schedule for the filing of motions). Despite two letters from the defendants seeking his participation in preparing the requested statement, Young did nothing. The court eventually accepted the defendants' unilateral version of the statement and set June 30, 2002, as the cut-off date for pretrial discovery.

In addition to answering Young's amended complaint, the defendants counterclaimed. Although Young did not respond to these counterclaims, the district court twice rebuffed defense motions for entry of default. Finally, the court, acting sua sponte, ordered Young to answer the counterclaims within twenty days or face the dismissal of his action. Young complied.

Over time, Young filed five motions to compel discovery, all of which were denied. Gordon filed three motions to compel, all of which were granted. Despite the court's serial orders, Young's discovery responses remained anemic. On April 1, 2002, Gordon moved to dismiss under Fed. R. Civ. P. 37(b)(2)(C). The district court denied the motion.

The Nation was girding for war and, on May 3, Young's counsel told the defendants that Young, an officer in the Army Reserve, might be "called up at any time." On Young's initiative, the parties agreed to take Gordon's deposition on June 10 and Young's on June 12. In early June, however, Young reneged; he declared that he would not appear, even if ordered by the court, unless Gordon's deposition could be completed in one day (an unlikely prospect). This volte-face led the defendants to file an emergency motion to compel adherence to the previously agreed deposition schedule. On June 10, the court granted the motion and ordered Young to appear for his deposition within seven days or face summary dismissal of his action.

Young chose not to appear. Instead, he filed a motion to reconsider on June 13, in which he informed the court that his counsel's mother had died during the preceding week. The court was unimpressed; although the death had occurred and Young's attorney had traveled out of state for the funeral, he had returned to Massachusetts by June 11 (prior to the filing of the motion to reconsider), and, despite offers from the defendants to reschedule his deposition for dates after the expiration of the seven-day period, Young had declared himself unavailable. Not surprisingly, the district court denied the motion to reconsider.

On June 18, the defendants again moved to dismiss pursuant to Rule 37(b)(2)(C). [1] Young opposed the motion but did not offer any date on which he would agree to sit for his deposition. On June 25, the district court dismissed the case based on Young's failure to comply with the June 10 order. The court characterized Young's defiance as his "third such violation of a Court Order."

Coincidentally, Young began his deposition on June 26 (a day after the court had dismissed his action, but before the parties had received notice of the dismissal order).
Page 80

The deposition was not completed on that date and, in view of the court's order, was never resumed. On July 8, Young moved to reconsider the dismissal, pointing out that he had finally made himself available to be deposed. On July 9, the district court denied the motion. This appeal ensued.

Before we reach the merits, we pause to consider the defendants' attempt to shelve the appeal on procedural grounds. This endeavor has two aspects. First, the defendants strive to persuade us that Young's notice of appeal was untimely. We are not convinced.

In a civil case in which the United States is not a party, a notice of appeal ordinarily must be filed within thirty days following the entry of final judgment. See Fed.R.App.P. 4(a)(1); see also Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 223 (1st Cir. 1994). As the defendants correctly note, Young's notice of appeal was not docketed until July 29, 2002 - more than thirty days after the entry of the June 25 judgment. The defendants view the passage of time as fatal, but they are reading the record through rose-colored glasses.

In particular, the defendants fail to appreciate the significance of Young's timely motion for reconsideration. Under our precedents, we may treat that motion as filed under Fed.R.Civ.P. 59(e) (which allows the filing of a post-trial motion to alter or amend a judgment). See e.g., Cintrón-Lorenzo v.Departamento De Asuntos Del Consumidor, 312 F.3d 522, 525 n. 3 (1st Cir. 2002); Batiz Chamorro v.P.R. Cars, Inc., 304 F.3d 1, 3-4 (1st Cir. 2002). Such a motion tolls the running of the appeal period as long as it is filed no later than ten days after entry of the judgment. [2] See Fed.R.App.P. 4(a)(4); Fed.R.Civ.P. 59(e). Thereafter, an order disposing of the motion restarts the appeal period. Air Line Pilots Ass'n, 26 F.3d at 223. Because the appeal period began anew upon the district court's denial of his Rule 59(e) motion, Young's notice of appeal was filed within the allotted thirty-day interval.

The defendants' second procedural ground is equally unavailing. They argue that Young's notice of appeal, which only references the denial of the motion for reconsideration, does not suffice to bring the dismissal order before us. See Fed.R.App.P. 3(c) (requiring, inter alia, that a notice of appeal "designate the judgment, order, or part thereof appealed from"). Under the case law, this boils down to a question of whether, notwithstanding the opaque language of the notice, the appellant's intent to appeal the underlying judgment was clear. E.g., Smith v. Barry, 502 U.S. 244, 248 (1992); Mariani-Giron v. Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir. 1991). There is no need to belabor the point. It suffices to say that, upon whole-record review, Young's desire to appeal from the underlying judgment is sufficiently plain and that, in any event, the defendants were not misled by the inartfully drafted notice of appeal. We therefore reject the argument that the scope of this proceeding should be limited to the denial of the motion for reconsideration. See
e.g., Foman v. Davis, 371 U.S. 178, 181-82 (1962); Batiz Chamorro, 304 F.3d at 4; Town of Norwood v. New Engl. Power Co.,

Page 81

202 F.3d 408, 415 (1st Cir. 2000).

We now proceed to the heart of the matter: the propriety of the dismissal. We begin our analysis with the unarguable proposition that courts cannot effectively administer justice unless they are

accorded the right to establish orderly processes and manage their own affairs. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). The authority to order sanctions in appropriate cases is a necessary component of that capability. HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 916 (1st Cir. 1988) (remarking that "[c]ourts cannot function if litigants may, with impunity, disobey lawful orders"). The sanction of dismissal is an important part of the armamentarium that the law makes available to trial courts. See Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962). Moreover, in the federal system the Civil Rules reinforce and augment the inherent power of district courts to dismiss cases for disregard of judicial orders. See,
e.g., Fed.R.Civ.P. 37(b), 41(b).

To be sure, dismissal ordinarily should be employed as a sanction only when a plaintiff's misconduct is extreme. See Enlace Mercantil Internacional, Inc. v. Senior Indus., Inc., 848 F.2d 315, 317 (1st Cir. 1988). We have recognized, however, that disobedience of court orders is inimical to the orderly administration of justice and, in and of itself, can constitute extreme misconduct. Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002); Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987). Still, dismissal should not be viewed either as a sanction of first resort or as an automatic penalty for every failure to abide by a court order. When noncompliance occurs, the ordering court should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation. See Tower Ventures, 296 F.3d at 46.

In the last analysis, the choice of an appropriate sanction must be handled on a case-by-case basis. See id.; see also Robson v. Hallenbeck, 81 F.3d 1, 2 (1st Cir. 1996) (explaining that this exercise "def[ies] mechanical rules"). For that reason, appellate panels traditionally give district courts considerable leeway in the exercise of the latter's admitted authority to punish noncompliant litigants. E.g., Batiz Chamorro, 304 F.3d at 4. It follows that "the trier's determination to dismiss a case for such a reason should be reviewed only for abuse of discretion." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1117 (1st Cir. 1989). In undertaking that review, we consider all the pertinent circumstances and balance a myriad of factors, including the trial court's need to maintain order and prevent undue delay, the prejudice (if any) to the offender's adversary, and the salutary policy favoring the disposition of cases on the merits. See HMG Prop., 847 F.2d at 917; Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971). This standard of review is not appellant-friendly -- and a sanctioned litigant bears a weighty burden in attempting to show that an abuse occurred. See Tower Ventures, 296 F.3d at 46; Spiller v. U.S.V. Labs., Inc., 842 F.2d 535, 537 (1st Cir. 1988).

In this instance, the court dismissed the case because Young, having been forewarned of the likely consequences of noncompliance, failed to abide by a court order to appear for a deposition within seven days. Young admits the infraction but argues that it was beyond his control. In this regard, he points to his status as an officer in the United States
Page 82

Army Reserve and contends that he could not commit to a deposition because he was on the verge of being "shipped out at any time." This contention will not wash. The fact of the matter is that Young received no such marching orders at any time during the spring of 2002. We fail to see how the possibility of impending military service prevented him from complying with the court's ukase.

Next, Young asseverates that his attorney was compelled to travel out of state due to a death in the family. That is true as far as it goes, but it does not go very far. This asseveration overlooks the undeniable fact that the attorney returned to Massachusetts on June 11, 2002. As of that date, Young still had ample time to comply with the court's order. He did not do so.

Young also maintains that the sanction was too harsh because he was acting in good faith. This is at best a debatable question - and one on which the district court had the better coign of vantage. At any rate, a finding of bad faith is not a condition precedent to imposing a sanction of dismissal. See, e.g., Reg'l Refuse Sys., Inc. v. Inland Reclam. Co., 842 F.2d 150, 156 (6th Cir. 1988); Farm Constr. Servs., Inc. v. Fudge, 831 F.2d 18, 21 (1st Cir. 1987). Certainly, the mere fact that a litigant or a lawyer may have had other priorities does not constitute a bulletproof excuse for noncompliance with a court order. See, e.g., Batiz Chamorro, 304 F.3d at 5; Tower Ventures, 296 F.3d at 47 n. 3; Pinero Schroeder v. FNMA, 574 F.2d 1117, 1118 (1st Cir. 1978) (per curiam).

In all events, it is axiomatic that "a litigant who ignores a case-management deadline does so at his peril." Rosario-Diaz v. Gonzalez, 140 F.3d 312, 315 (1st Cir. 1998). The circumstances here do not suggest that this case is a viable candidate for a relaxation of this principle. For one thing, Young had a documented history of disregarding the court's orders and/or applicable rules. Among other errors, he refused to participate in the framing of the joint statement; he did not respond to the defendants' counterclaims until the court threatened to dismiss his case; and he did not provide adequate discovery responses despite a series of orders compelling him to do so. For another thing, it was Young who originally suggested a stipulation scheduling the parties' depositions for June 10 and June 12 -- and who then reneged. Young's failure to achieve the time line that he himself had recommended weighs heavily against him. Cf. Tower Ventures, 296 F.3d at 47 (explaining that "when a litigant seeks an extension of time and proposes a compliance date, the court is entitled to expect that the litigant will meet [his] self-imposed deadline"); Mendez v. Banco Popular de P.R., 900 F.2d 4, 6 (1st Cir. 1990) (similar).

Young next calls our attention to the acrimony that permeated the litigation. Because the matter was so contentious, he asserts, every attempt to schedule depositions became a pitched battle in a seemingly endless war. This may be true but it is hardly exonerative. Since Young himself contributed significantly to the bellicose nature of the proceedings, he scarcely can be heard to advance fractiousness as a reason for disregarding the judge's directives. Cf. Hosea 8:7 (warning that those who "have sown the wind . . . shall reap the whirlwind").

Young's last two arguments are interrelated. First, he protests that he ultimately did comply with the court's order when he began to give his deposition on June 26 (nine days after the expiration of the court-imposed deadline for his appearance). This importuning misses the mark. Young's violation of a time-specific
Page 83

order was not cured by subsequent compliance at his leisure. See Serra-Lugo v. Mayaguez Consortium-Las Marias, 271 F.3d 5, 6 (1st Cir. 2001) (per curiam) (affirming dismissal notwithstanding appellant's belated compliance with the court's order in "a somewhat relaxed manner"). At the very least, such violations undermine the court's efforts to manage its docket efficiently and effectively. See Tower Ventures, 296 F.3d at 46 (explaining the centrality of scheduling orders in the case-management process and noting that "a party's disregard of such orders robs them of their utility"); Rosario-Diaz, 140 F.3d at 315 (discussing a party's "unflagging duty to comply with clearly communicated case-management orders").

Relatedly, Young makes a "no harm, no foul" argument: because the parties began to take the deposition before they knew of the dismissal, he posits, the sanction was unnecessary. But this narrow assessment overlooks that the court has an institutional interest in ensuring compliance with its orders. Given that interest, a court is not obliged to tolerate a party's disdain for court-imposed

deadlines. As we wrote two decades ago, "[i]f such conduct were condoned by a slap on the wrist . . . the district court . . . might well find the lawyers calling the tune on discovery schedules." Damiani v. R.I. Hosp., 704 F.2d 12, 16 (1st Cir. 1983) (footnote omitted).

Then, too, there is another integer in this equation. Sanctions often are intended to do more than calibrate the scales between a particular plaintiff and a particular defendant. One principal purpose is to deter others from similar misconduct. See Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643 (1976); Barreto v. Citibank, N.A., 907 F.2d 15, 16 (1st Cir. 1990). When a party flouts a time-specific order, that purpose is frustrated unless the court sends a strong signal. Imposing a meaningful sanction delivers just such a message.

We need go no further. In view of the history, travel, and circumstances of the case, there is no principled way that we can upbraid the district court for following through on its explicit warning to dismiss the action if Young did not adhere to the deposition order. And because the court acted well within its discretion in dismissing the case, it necessarily follows that it did not err in refusing reconsideration. See Batiz Chamorro, 304 F.3d at 7.

Affirmed.

Notes:

[*] Of the Tenth Circuit, sitting by designation.

[1] The rule states in pertinent part that if a party fails to obey an order to provide or permit discovery, the court may impose sanctions (including an order "dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party . . . ."). Fed.R.Civ.P. 37(b)(2)(C).

[2] The ten-day period is computed without counting weekends and holidays. See Fed.R.Civ.P. 6 (a); see also Roque-Rodriguez v. Lema Moya, 926 F.2d 103, 107 (1st Cir. 1991). On this basis, Young had until July 10 to file his Rule 59(e) motion. The motion was, therefore, timely.

Lawriter Corporation. All rights reserved.

The Casemaker Online database is a compilation exclusively owned by Lawriter Corporation. The database is provided for use under the terms, notices and conditions as expressly stated under the online end user license agreement to which all users assent in order to access the database.